UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————X

CHRISTOPHER PORTER,

              Petitioner,

    -against-                           05 CV 1563 (SJF)

PAUL ANNETTS, SUPT.,              **OPINION & ORDER**

              Respondent.

————————————————————X

FEUERSTEIN, J.

    Petitioner *pro se* Christopher Porter ("petitioner" or "Porter") brings this action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. For the reasons stated below, Porter's petition for habeas corpus is denied.

I.    Factual Background

    On the afternoon of November 8, 1999, Raymond Whaley ("Whaley") was robbed at gunpoint by three men as he was walking on Sutter Avenue in Queens County. (Appellant's Brief to the Second Department, dated Feb. 27, 2003 ["Appellant's Mem."], at 6; Pro-Se Supplemental Brief to the Second Department, dated Sept. 9, 2003, at 1; Respondent's Memorandum of Law In Opposition to Petition for a Writ of Habeas Corpus, dated June 13, 2005 ["Respondent's Mem."], at 2).[1] Shortly thereafter, Whaley identified petitioner and his co-defendants as the perpetrators and they were apprehended by the police. (Appellant's Mem. at 6; Respondent's Mem. at 2). The three men were later charged, as having acted in concert, with

———————————————

[1] This court does not have the trial transcript; however, based on the parties' submissions, the transcript is unnecessary for purposes of this petition.

Robbery in the First and Second Degrees. Following a jury conviction, the trial court sentenced

petitioner, as a predicate felon, to concurrent terms of imprisonment of 10 years on each count.

## II.     Voir Dire

Jury selection commenced on February 28, 2001. During the third round of voir dire, a

prospective juror expressed concerns about any defendant who would not take the stand in his

own defense. Counsel for co-defendant Michael Jackson ("Jackson") questioned Robert Alonso

("Alonso") about whether he would be able to follow the rule that a defendant's failure to testify

cannot be held against him:

> MR. GANUN: Now sir . . . the Judge is going to tell you that, as a
> juror you are not allowed to hold the fact that a particular
> defendant doesn't take the stand, do you understand, you can't hold
> it against him. Now . . . could you tell us whether you could or go
> [sic] through with that instruction?
>
> PROSPECTIVE JUROR [Alonso]: Of course, I could follow the
> instructions. I just think it would help, if he is someone who is
> innocent, I don't understand why he couldn't go up and testify and
> say he didn't do it.

(Appellant's Mem. at 3 (quoting TT at 266); see also Petitioner's Memorandum of Law In

Support of the Petition for a Writ of Habeas Corpus, dated Mar. 14, 2005 ["Petitioner's Mem."],

at 4 (quoting same)). Jackson's counsel then attempted to explore the matter further:

> MR. GANUN: In this particular case you would have a difficulty if
> the person didn't take the stand?
>
> [Alonso]: I am just saying that I understand I have to follow the
> instructions but -
>
> THE COURT: You will follow the instructions as the Court gives
> them to you without any hesitation?
>
> [Alonso]: Right.

2

(Appellant's Mem. at 3-4; Petitioner's Mem. at 4 (quoting TT at 266-67)). Although Jackson's counsel subsequently made a request to approach the bench regarding Alonso, the court denied the request. (Id.)

> Petitioner's counsel returned to Alonso during his voir dire:

>> MR. BART: Mr. Alonso . . . [y]ou said you can follow the Judge's instructions but on the other hand you said something . . . that is somewhat inconsistent with that. That you said if someone didn't speak, does that mean when you go in the jury room if they haven't spoken they must not be innocent, otherwise they would have spoken?

>> [Alonso]: As I said before, I said that I would follow the Court's orders, and just that would weigh a factor in my opinion. Because I feel that if I didn't do something I feel I would say something or I would think something suspicious about it.

>> MR. BART: You say . . . ultimately it would be a factor, is that correct?

>> [Alonso]: Correct.

(Appellant's Mem. at 4; Petitioner's Mem. at 5 (quoting TT at 285)). The court then interrupted counsel to instruct the entire pool of prospective juror that every defendant has a constitutional right to "testify or offer evidence or not. And if they do not testify or offer any evidence, you cannot hold that against [the defendants]. . . . And I tell you that you will violate your oath as jurors if you consider . . . the fact that the defendants did not testify or offer any evidence." (Appellant's Mem. at 5; Petitioner's Mem. at 6 (quoting TT at 285-86)). The court then asked the prospective jurors, addressing Alonso in particular, whether they could follow the court's instructions with respect to this matter, and Alonso answered, "yes." (Id. (quoting TT at 286)). The court continued, "[c]an you promise us all that you will not [hold it against the

defendants]?," and Alonso answered, "[y]es." (Id.). After petitioner's counsel resumed questioning, Alonso assured counsel that the defendant's decision not to testify would not be a factor but it "might be a thought in the back of [his] head," though he would not bring it up during deliberations. (Appellant's Mem. at 5; Petitioner's Mem. at 6-7 (quoting TT at 286-87)).

At the conclusion of voir dire, defense counsel challenged Alonso for cause, arguing that Alonso "repeatedly and persistently" stated that "an innocent man should speak up in his own behalf." (Id. (quoting TT at 301). The State opposed the challenge, maintaining that Alonso's "articulati[on] [of] a natural inclination to hear the other side" did not nullify his repeated assurances that he would follow the court's instructions as directed. (Respondent's Mem. at 4 (quoting TT at 301)). The trial court denied the challenge for cause, thus forcing defense counsel to use one of the fifteen allotted peremptory challenges to remove Alonso from the jury pool. (Id.). Ultimately, the petitioner and his co-defendants exhausted the fifteen peremptory challenges allotted to them.

III.    Procedural History

Counsel was appointed to represent petitioner on appeal to the Appellate Division where petitioner's sole argument was that he had been deprived of his constitutional right to a fair and impartial jury by the trial court's denial of his challenge for cause of prospective juror Alonso. (Appellant's Mem.) On May 24, 2004, the Appellate Division unanimously affirmed petitioner's conviction. People v. Porter, 7 A.D.3d 817, 776 N.Y.S.2d 890 (2d Dep't 2004). The court held that, "[c]ontrary to the defendant's contentions, the court properly refused to excuse a prospective juror for cause, as he indicated that he would be able to follow the law as provided by the court." Id. at 817.

4

With respect to the other arguments petitioner raised in his supplemental *pro se* brief, the

Appellate Division held that those arguments were either "unpreserved for appellate review or

without merit." Id. In a certificate dated July 14, 2004, the Court of Appeals denied petitioner's

leave application. People v. Porter, 3 N.Y.3d 661, 816 N.E.2d 576, 782 N.Y.S.2d 703 (2004).

In petitioner's *pro se* application to this court, his only claim is that he was deprived of

his constitutional right to a fair and impartial jury by the trial court's denial of his challenge for

cause of Alonso.

IV.    Discussion

    A.    Jurisdictional Requirements

A petitioner seeking habeas corpus review must satisfy certain jurisdictional

requirements. The first line of inquiry is whether the petition is barred by the applicable statue of

limitations. In Lindh v. Murphy, 521 U.S. 320 (1997), the Supreme Court held that the Anti-

Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, which

imposes a one-year statute of limitations on habeas corpus petitions, applies prospectively to "the

general run of habeas cases" that are "filed after the date of the Act." Lindh, 521 U.S. at 327; see

also Boria v. Keane 90 F.3d 36, 37-38 (2d Cir. 1996) (per curiam). AEDPA states in pertinent

part:

> (1) A 1-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court. The limitation period shall run from the
> latest of - (A) the date on which judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review.

28 U.S.C. § 2244(d)(1). Porter filed his petition on March 14, 2005, after the effective date of

the Act. According to Lindh, AEDPA's provisions, including the one-year statute of limitations, apply to his petition. Thus, to determine whether the petition is timely under the provisions of the Act, the court must calculate one year from the latest of the dates provided for in 28 U.S.C. § 2244(d). A conviction becomes "final" under AEDPA when the highest state court concludes its direct review or when the time to seek direct review in the United States Supreme Court by writ of certiorari expires (which is ninety days after entry of the judgment of conviction or of the order denying discretionary review). See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). The Court of Appeals denied leave to appeal on July 14, 2004; thus, Porter's petition became "final" ninety days later, on October 12, 2004. Porter filed his petition on March 14, 2005, well within the one-year statutory period. The petition therefore satisfies the requirements of Section 2244(d).

B.    Standard

When the state court has rejected the petitioner's claim on the merits, as is the case here, a federal court considering a habeas corpus petition under 28 U.S.C. § 2254, as amended by AEDPA, must defer to the state court's rejection of the claim, and must deny the writ unless the state-court adjudication (1) "was contrary to," or (2) "involved an unreasonable application of," clearly established federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Williams v. Taylor, 529 U.S. 362, 367 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). In this case, the Appellate Division explicitly stated that "the court properly refused to excuse a prospective juror for cause. . . ." Porter, 7 A.D.3d at 817. Therefore, the deferential standard of AEDPA applies to review of this claim.

In Williams, the Court held that "under the 'unreasonable application' clause, a

6

federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413. The Second Circuit has concluded that an "objectively unreasonable" application of Supreme Court precedent falls somewhere between "merely erroneous and unreasonable to all reasonable jurists." Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. Williams, 529 U.S. at 405. "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Id. at 389.

C.     Application

Petitioner makes no allegation that the impaneled jury was not impartial. Rather, he argues that he was forced to use a peremptory challenge to remove Alonso from the jury pool. In People v. Blyden, 55 N.Y.2d 73, 75, 432 N.E.2d 758, 447 N.Y.S.2d 886 (1982), a potential juror volunteered to speak to the judge about his bias against minorities, including blacks. In response to the court's thrice-repeated question about whether he could put aside his feelings about minorities, the juror said "I think I could." Id. In that case, the New York Court of Appeals found that it was error for the trial court not to discharge the juror for cause and as such, the court reversed the order of the Appellate Division and ordered a new trial. Id. at 79.

In this case, there was no error as Alonso clearly stated that he could follow the law. It is

7

well settled that "the process of empaneling a jury is committed to the sound discretion of the trial judge and will not be overridden absent an abuse of discretion." Perez v. McGinnis, 96 CV 5868, 1999 U.S. Dist. LEXIS 22949, at *26 (E.D.N.Y. Jan. 29, 1999) (citing United States v. Torres, 128 F.3d 38, 44 (1997)). This deference is based on the fact that the trial judge is "in the best position to evaluate the juror's demeanor and to determine . . . whether he could fairly and impartially hear the case . . . ." United States v. Ploof, 464 F.2d 116, 118 (2d Cir. 1972). Based upon the principles of deference and the circumstances of this case, I find that the judge did not abuse his discretion by denying defendant's challenge for cause. People v. Rudolph, 266 A.D.2d 568, 569, 698 N.Y.S.2d 912 (2d Dep't 1999) (for-cause challenge properly denied when juror indicated that she thought defendant had an obligation to testify and then agreed with court's instruction not to give adverse inference to defendant's failure to testify).

Furthermore, while it is reversible error under New York State law for a trial court to improperly deny a challenge for cause if the defendant consequently uses a peremptory challenge on that juror and then exhausts his peremptory challenges before jury selection is complete, the Second Circuit has rejected this argument. Thus, even if the judge erroneously failed to dismiss Alonso for cause, that does not give rise to a constitutional deprivation under federal law. "[T]he Supreme Court has made clear, at least in the criminal context, that a party's use of a peremptory strike to cure a court's erroneous failure to dismiss a juror 'for cause' effects neither a constitutional nor a rule-based deprivation, as long as the jury eventually empaneled is impartial." Cruz v. Jordan, 357 F.3d 269, 271 (2d Cir. 2004) (citing United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000); Ross v. Oklahoma, 487 U.S. 81, 88 (1988)). See also United States v. Towne, 870 F.2d 880, 885 (2d Cir. 1989) (holding that as long as the jury that was

ultimately selected was fair and impartial, there is no due process violation); <u>Santiago v. Herbert</u>, 04 CV 4515, 2005 U.S. Dist. LEXIS 6535, at *10-12 (E.D.N.Y. Apr. 15, 2005) (finding that the denial of a for-cause challenge only implicates the right to an impartial jury if that prospective juror who should have been excused actually sat on the jury).

In sum, considering the holdings of both the Supreme Court and the Second Circuit, the Appellate Division's decision rejecting petitioner's due process argument was neither "contrary to," nor an "unreasonable application of" clearly established federal law.

V.     Conclusion

For the reasons stated above, defendant's petition for a writ of habeas corpus is denied. SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: November 1, 2006

Copies to:

Christopher Porter
#01A3135
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788-1000

New York State Attorney General's Office
Attn: Malancha Chanda
120 Broadway, 22nd Floor
New York, NY 10271